UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN VARECKA, individually and on behalf of others similarly situated, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:21-cv-00876 |
| CSX TRANSPORTATION, INC., | ) | |
| Defendant. | ) | |

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**
(Doc. 9)

Plaintiff John Varecka brings this putative class action against Defendant CSX Transportation, Inc. ("CSX"), his employer, alleging CSX interfered with his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654. Pending before the court is CSX's September 21, 2021 motion to dismiss Plaintiff's Complaint (Doc. 9). Plaintiff opposed the motion on October 6, 2021, and CSX replied on October 13, 2021, at which time the court took the motion under advisement. The issue presented is one of first impression in the Second Circuit: whether hours an employee would have worked but for a wrongful termination should count towards FMLA eligibility upon reinstatement.

Plaintiff is represented by Jonathan E. Staehr, Esq., Jonathan L. Stone, Esq., and Nicholas D. Thompson, Esq. CSX is represented by Susan C. Roney, Esq., and Thomas R. Chiavetta, Esq.

## I. Allegations in the Complaint.

Plaintiff is a resident of New York and has been employed for thirteen years by CSX, which provides freight rail services in several states, including New York. Plaintiff suffers from a serious health condition and was granted intermittent FMLA leave by CSX. In 2018, CSX accused Plaintiff of abusing his FMLA leave by using it to take off

holidays and terminated him. Plaintiff challenged his termination in arbitration pursuant to a collective bargaining agreement. In 2021, in a series of decisions addressing separate incidents of allegedly improper use of FMLA leave, the arbitrator "found for [Plaintiff], reinstating him with backpay." (Doc. 1 at 4, ¶ 27.)

Because the Complaint "relies heavily upon [the] terms and effect" of the arbitration decisions (Docs. 9-2 & 9-3), they are integral to the Complaint and the court may consider them in deciding the motion to dismiss. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam)). The decisions are also subject to judicial notice, which CSX requests and Plaintiff does not oppose, because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Cox v. Perfect Bldg. Maint. Corp.*, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017) ("[C]ourts have regularly taken judicial notice of arbitration awards . . . in considering a motion to dismiss[.]") (collecting cases); *Caldarera v. Int'l Longshoremen's Ass'n, Loc. 1*, 765 F. App'x 483, 485 n.2 (2d Cir. 2019) ("The District Court took judicial notice of the [arbitration] decision pursuant to Federal Rule of Evidence 201(b). We identify no error in this regard.").

Plaintiff's challenge to his termination resulted in two arbitration awards by the National Railroad Adjustment Board ("NRAB"), both issued on January 14, 2021. The first decision addressed Plaintiff's alleged misuse of FMLA leave on or about Christmas 2017. The NRAB found that CSX had previously warned Plaintiff regarding his misuse of FMLA leave in February 2017. The NRAB was "satisfied" that CSX "established that [Plaintiff] had a pattern of FMLA use in connection with holidays, thereby creating the presumption that his use of leave on this holiday might not have been related to his FMLA leave approval." (Doc. 9-2 at 5.) The NRAB nonetheless concluded that CSX had not "met its burden of proof to support its charge" because Plaintiff presented evidence to the hearing officer, although he "did not wish to have it entered into the record because it contained personal information[,]" that he "was seen at [an] urgent care center for dizziness" on December 23, 2017. *Id.* The NRAB held that "[b]ecause [Plaintiff]

submitted the documentation requested by the [h]earing [o]fficer, who then reviewed it on the record, [CSX] has not shown that [Plaintiff] abused his FMLA leave in this instance." *Id.* The NRAB ordered that "[t]he discipline imposed must be rescinded and [Plaintiff] made whole." *Id.*

The NRAB's second decision considered Plaintiff's alleged misuse of FMLA leave during the New Year holiday in 2018. The hearing officer refused to allow Plaintiff's girlfriend to testify that she had taken care of Plaintiff during his absence, incorrectly labeling her testimony as "hearsay." (Doc. 9-3 at 5.) The NRAB found that the hearing officer's "refusal to take her testimony was a denial of [Plaintiff's] fundamental right to due process and a violation of the [collective bargaining a]greement, which affords an employee the right to present necessary witnesses." *Id.* Describing this error as "fatal[,]" the NRAB ordered "that the discipline be rescinded and that [Plaintiff] be made whole for wages lost in accordance with the parties' [a]greement and/or past practice." *Id.*

After he was reinstated, Plaintiff again applied for FMLA leave. CSX rejected his request because he had not worked the requisite number of hours in the preceding year to qualify for it. Plaintiff alleges that his "unlawful termination is the only reason he had not worked enough qualifying hours during the preceding year" and that the "FMLA prohibits employers from benefiting from an unlawful termination when determining qualifying hours." (Doc. 1 at 4, ¶¶ 30-31.) He further asserts that his unlawful termination and denial of FMLA leave after reinstatement is part of CSX's pattern and practice of using delays in the arbitration process to "deny[] FMLA leave to reinstated employees because of the time they were out of work due to their unlawful suspensions and/or terminations." *Id.* at 2, ¶ 5. In other words, he alleges that CSX purposefully deprives reinstated employees of the hours they need to qualify for FMLA leave.

Plaintiff seeks to bring this action not only on his own behalf but also on behalf of a putative class consisting of: "Individuals employed by CSX who have been reinstated with backpay by an arbitrator and who, at any time from three years preceding the

complaint's filing to the resolution of this action, were denied FMLA leave solely because of their overturned suspensions and/or terminations." *Id.* at 4, ¶ 33.

The Complaint asserts a single cause of action for interference with rights under the FMLA. Plaintiff alleges that class members have a right to appeal suspensions and terminations to an arbitrator under their unions' collective bargaining agreements with CSX, but that the process "takes years" and CSX is "using this delay to its advantage" in a "pattern and practice" of "interfere[ing] with, restrain[ing], and den[ying] the exercise of the protected rights of Plaintiff and the putative class members" by denying their requests for FMLA leave after their reinstatement. *Id.* at 1-2, 6, ¶¶ 4-5, 45. Plaintiff seeks compensatory, liquidated, and punitive damages; declaratory and injunctive relief; and attorney's fees, costs, and prejudgment interest.

## II. Conclusions of Law and Analysis.

### A. Whether the Complaint Must Be Dismissed for Failure to State a Claim.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give

rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

CSX contends Plaintiff fails to adequately plead that he was an eligible employee under the FMLA and therefore his Complaint must be dismissed. To state a claim for interference with FMLA rights, Plaintiff must plausibly allege:

> 1) that []he is an eligible employee under the FMLA; 2) that the [D]efendant is an employer as defined by the FMLA; 3) that []he was entitled to take leave under the FMLA; 4) that []he gave notice to the [D]efendant of h[is] intention to take leave; and 5) that []he was denied benefits to which []he was entitled under the FMLA.

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016); *see also* 29 U.S.C. § 2615(a)(1) (authorizing private cause of action for interference with FMLA rights).

An "eligible employee" is an employee "who has been employed . . . for at least 12 months . . . and . . . for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(i)-(ii). Plaintiff admits that "he had not worked enough qualifying hours during the preceding year[,]" (Doc. 1 at 4, ¶ 30); however, he asserts that "the only reason he had not worked enough" was CSX's "unlawful termination" and that "[t]he FMLA prohibits employers from benefitting from an unlawful termination when determining qualifying hours." *Id.* at 4, ¶ 30-31.

There is no statute, regulation, or binding precedent that definitively resolves whether hours that Plaintiff would have worked but for his wrongful termination count towards the FMLA's 1,250-hour requirement. Nor is there any binding authority as to whether a finding that Plaintiff's termination was "unlawful," as Plaintiff alleges his termination was, makes a difference. The court must therefore look to the statutory and regulatory scheme and relevant case law to determine whether Plaintiff has met the "hours of service" threshold to qualify as an "eligible employee." 29 U.S.C. § 2611(2)(A)(i)-(ii); *see also United States v. Koh*, 199 F.3d 632, 637 (2d Cir. 1999)

(holding that "statutory language, case law, and the overall statutory scheme" are relevant to statutory interpretation) (citing *Holloway v. United States*, 526 U.S. 1 (1999)).

Nothing in the FMLA or its regulations directly addresses whether hours Plaintiff would have worked but for his termination constitute "hours of service[.]" 29 U.S.C. § 2611(2)(A)(ii). FMLA regulations provide for crediting hours an employee "would have" worked in only one limited circumstance. Pursuant to the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4316(a), "[a]n employee returning from USERRA-covered service shall be credited with the hours of service that would have been performed but for the period of absence from work due to or necessitated by USERRA-covered service in determining the employee's eligibility for FMLA-qualifying leave." 29 C.F.R. § 825.110(c)(2). Apart from USERRA and special rules for airline flight crews, "whether an employee has worked the minimum 1,250 hours of service is determined according to the principles established under the Fair Labor Standards Act (FLSA) for determining compensable hours of work." *Id.* at (c)(1); *see also* 29 U.S.C. § 2611(2)(C) ("For purposes of determining whether an employee meets the hours of service requirement . . . , the legal standards established under section 207 of [the FLSA] shall apply.").

"[T]he FLSA does not define the term 'hours of service[.]'" *Ricco v. Potter*, 377 F.3d 599, 604 (6th Cir. 2004). "[T]he basic principle that underlies the FLSA [is that] [e]mployees are entitled to compensation only for 'work.'" *Reich v. New York City Transit Auth.*, 45 F.3d 646, 651 (2d Cir. 1995). "[A]n activity constitutes 'work' (compensable under the FLSA) if it involves 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" *Id.* (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 598 (1944)); *accord Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014).

Section 207 of the FLSA states that "payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause . . . *are not made* as compensation for [an

employee's] hours of employment[.]" 29 U.S.C. § 207(e)(2) (emphasis supplied); *see also* The Family and Medical Leave Act of 1993, 60 Fed. Reg. 2180, 2186 (Jan. 6, 1995) ("'Hours worked' does not include time paid but not 'worked' (paid vacation, personal or sick leave, holidays), nor does it include unpaid leave (of any kind) or periods of layoff."). FLSA regulations, in turn, provide that "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked[.]" 29 C.F.R. § 785.16. While these definitions appear to exclude hours Plaintiff would have but did not work between his termination and reinstatement from counting as "hours of service" under the FMLA, at least one court has held otherwise.

In *Ricco v. Potter*, the Sixth Circuit held that "neither the FMLA nor the FLSA addresses directly the situation in this case involving hours that an employee would have worked but for her unlawful prior termination by her employer." 377 F.3d at 605. It found that the FLSA "does not clearly prevent such hours from counting, and the purpose of the FMLA's hours-of-service requirement is properly served by including these hours." *Id.* In so ruling, it emphasized that "denying employees credit towards the hours-of-service requirement for hours that they would have worked, but for their unlawful termination, rewards employers for their unlawful conduct" and that "[t]he goal of a make-whole award is to put the employee in the same position that she would have been in had her employer not engaged in the unlawful conduct; this includes giving the employee credit towards the FMLA's hours-of-service requirement[.]" *Id.* at 605.

The concurrence in *Ricco* stated that "the remedies provided by the [FMLA] and the [FLSA] are make-whole, equitable remedies, as the Court's opinion suggests[,]" and observed that "a contrary decision would contravene fundamental general principles of restitution and equitable remedies of long standing by allowing the employer to profit from its own infringement of the plaintiff's right to the statutory benefits derived from her own labor." *Id.* at 606 (Merritt, J. concurring).

CSX argues that *Ricco* is not persuasive and is distinguishable because its termination of Plaintiff was not "unlawful." *See Nance v. Goodyear Tire & Rubber Co.*,

527 F.3d 539, 557 (6th Cir. 2008) (holding that *Ricco* "created an exception for 'hours that the employee wanted to work but was *unlawfully prevented* by the employer from' doing so") (emphasis in original) (quoting *Ricco*, 377 F.3d at 605). Plaintiff counters that his appeal was a "minor dispute" under the Railway Labor Act and his "reinstatement with backpay is a finding that his termination violated a law, namely the Railway Labor Act." (Doc. 14 at 10.) (internal quotation marks omitted). CSX replies that, "[t]o the contrary, by resolving the dispute over [Plaintiff's] dismissal peaceably through the CBA's arbitration process, CSX satisfied its [Railway Labor Act]-imposed duty [and it] did not violate the [Railway Labor Act]." (Doc. 17 at 11.) Whether Plaintiff's termination violated the Railway Labor Act is a mixed question of fact and law which the court cannot resolve on a motion to dismiss. *See Sec. & Exch. Comm'n v. Fiore*, 416 F. Supp. 3d 306, 330 (S.D.N.Y. 2019) (holding "mixed question of fact and law" cannot "be resolved solely from the facts alleged in the Complaint").

CSX relies on the First Circuit's construction of "hours of service" in *Plumley v. S. Container, Inc.*, wherein it concluded:

> Our appraisal of the text and structure of the FMLA, together with the incorporated provisions of the FLSA, discloses unambiguous language leading to an entirely plausible result. Thus, we hold that hours of service, as those words are used in the FMLA, include only those hours actually worked in the service and at the gain of the employer. It follows inexorably that compensation resulting from an arbitral award, in the nature of back pay for wrongful discharge, falls outside the statutory ambit.

303 F.3d 364, 372 (1st Cir. 2002). The First Circuit recognized that an employer may be estopped from challenging an employee's eligibility, but only if the requirements of estoppel are met. *See id.*

While the Second Circuit has not addressed the precise question at issue in this case, it has decided two analogous issues. In *Woodford v. Cmty. Action of Greene Cnty., Inc.*, the Second Circuit considered an FMLA regulation providing that if an employee "lacking the minimum work hours to qualify for leave under the [FMLA] requests leave," the employee would "'be deemed to be eligible'" if the employer incorrectly confirmed eligibility or failed to provide timely notice of ineligibility. 268 F.3d 51, 55, 55 n.1 (2d

Cir. 2001) (quoting 29 C.F.R. § 825.110(d)). The Second Circuit held that "[t]he regulation impermissibly expands the scope of eligibility, however, because it compels employers to treat as eligible employees who have not met the twelve month/1,250 hours requirement based on the regulation's additional set of notice requirements." *Id.* "Because 29 C.F.R. § 825.110(d) would permit, under certain circumstances, employees who have not worked the statutorily defined minimum required hours to become eligible for the [FMLA's] benefits, it contradicts the expressed intent of Congress and therefore is invalid." *Id.* This holding supports a conclusion that the Second Circuit would follow the First Circuit's definition of "hours of service."

The Second Circuit has nonetheless opined that "the [FMLA] leaves space for rulemaking with regard to notice requirements and that a different regulation focused on the question of whether an employee relies upon an employer's notice of eligibility might cure the defect of the present regulation" by "creating a right of estoppel[.]" *Id.* at 57 (internal quotation marks and citation omitted). It invited "future employees" to bring equitable estoppel claims "even without an enforceable regulation[.]" *Id.; see also id.* at 57 n.2 ("Had [plaintiff] raised an equitable estoppel argument on this appeal, we would willingly consider it here."). "[I]t is our view that even in the absence of a formal regulation, the doctrine of equitable estoppel itself may apply where an employer who has initially provided notice of eligibility for leave later seeks to challenge that eligibility." *Woodford*, 268 F.3d at 57. The Second Circuit thus recognized that, in the proper circumstances, an otherwise ineligible employee may become eligible for FMLA leave through the doctrine of equitable estoppel.

In *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 722 (2d Cir. 2001), the Second Circuit followed *Woodford* and affirmed the district court's ruling that the employer was "estopped from challenging [plaintiff's] eligibility due to its failure to post notices required by the FMLA." *Id.* at 722. In so holding, it overruled *LaCoparra v. Pergament Home Ctrs., Inc.*, 982 F. Supp. 213 (S.D.N.Y. 1997), which allowed an employee who did not meet the 1,250-hour threshold to proceed with an interference

claim without satisfying the requirements of estoppel under federal common law. The Second Circuit rejected this approach, ruling:

> We disagree with this holding insofar as the court in *LaCoparra* failed to require that the plaintiff establish all of the elements of equitable estoppel. The FMLA does not provide a private right of action for any employee, only for "eligible employee[s]." 29 U.S.C. § 2617(a)(1). *LaCoparra* purports to create a cause of action under § 2617 even where the employee does not meet the statutory requirements of an eligible employee set forth under the FMLA. *See* 29 U.S.C. § 2611(2)(A) (eligibility requirements). The language of the statute does not permit this result.
>
> On the other hand, nothing prevents a court from exercising its equitable powers to estop a party from raising a particular claim or defense. The doctrine of equitable estoppel is a judicial doctrine of equity which operates apart from any underlying statutory scheme. If all the elements of equitable estoppel are met, an employer may be estopped from challenging an employee's eligibility as a result of the employer's misconduct in failing to post the required notice.
>
> Thus, the question becomes whether, assuming [plaintiff] does not prevail on her arguments that she has met the minimum 1250 hour requirement, [defendant] should be equitably estopped from challenging her eligibility due to its failure to post required notices. Because this is an equitable estoppel claim under a federal statute, federal law principles of equitable estoppel are applicable. *See, e.g., Wall v. Constr. & Gen. Laborers' Union, Loc. 230*, 224 F.3d 168, 175-76 (2d Cir. 2000).

*Id.* at 724-25.

The Second Circuit's decisions in *Woodford* and *Kosakow* depart from the Sixth Circuit's approach in *Ricco*, rendering *Ricco* unpersuasive. The Second Circuit has made clear that, while federal common law equitable doctrines can "confer eligibility upon an otherwise ineligible employee[,]" an employee must "establish all of the elements" of an equitable claim. *Id.* at 724; *accord Plumley*, 303 F.3d at 372 (considering claims of collateral and equitable estoppel under federal common law). Because Plaintiff has not alleged the elements of an equitable claim in his Complaint, CSX's motion to dismiss (Doc. 9) must be GRANTED.

**B. Whether Plaintiff May Amend His Complaint.**

Plaintiff may only amend his complaint "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court must "freely give leave when justice so requires." *Id.* Because "outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts[,]" *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) (citation omitted), "permission to amend a complaint at least once is normally given." *Bozeman v. Rochester Tel. Corp.*, 205 F.3d 1321 (2d Cir. 2000).

Plaintiff has not requested leave to amend and the court is not required to grant it *sua sponte*. *See Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) ("[N]o court can be said to have erred in failing to grant a request that was not made.") (quoting *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted)). Local Rule 15(a) requires parties seeking leave to amend to file their proposed amendments so that other parties may oppose that request and so that the court can evaluate whether leave to amend should be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Plaintiff therefore must move for leave to amend in compliance with the Local Rules or file an amended complaint with CSX's written consent within thirty (30) days of this Opinion and Order or this case will be dismissed.

**CONCLUSION**

For the foregoing reasons, the court GRANTS CSX's motion to dismiss (Doc. 9).
SO ORDERED.

Dated this 31st day of May, 2022.

Christina Reiss, District Judge
United States District Court